The STATE of Utah, Plaintiff
and Respondent,

v.

Richard A. RICCI, Defendant
and Appellant.

No. 18165.

Supreme Court of Utah.

Sept. 29, 1982.

David L. Wilkinson, Salt Lake City, for defendant and appellant.

Bryce K. Bryner, Price, for plaintiff and respondent.

PER CURIAM:

The defendant appeals from a jury conviction of burglary, in violation of U.C.A., 1953, § 76–6–202.[1]

The inculpatory evidence admitted without objection, which substantially supported the verdict, may be abbreviated and recounted as follows. At about 4:00 a.m. on a Sunday morning, a policeman observed defendant leaving a bar by the back door. The officer confronted the defendant and (along with other officers who had arrived at the scene) entered the bar with the defendant. The door was jammed and a lock was lying on the ground nearby. When defendant accompanied the officers into the bar, he voluntarily said, "I guess I'm in trouble now." The defendant was arrested, given the *Miranda* warning and frisked. The officer found a knife in defendant's sock, and a screwdriver without a handle in his pocket. Inspection of the premises revealed that the jukebox, change machine and safe had all been broken into.

The owner of the bar was called and when he arrived, the following exchange occurred between defendant and the owner: "Why did you do this to me?" "I don't know. I'm sorry. But everything you own is in this trash can." Found in the trash can were $250 in coins, a claw hammer, food, and other items. This discussion occurred before the officers asked anything about the contents of the can referred to. An inventory of the can was taken and it was subsequently locked in the evidence room.

At the police station, defendant was asked if he knew and understood his rights and he said he did. In response to a question one of the officers asked, defendant said that he had hidden in the bar after closing, had seen the officer making door checks and had emerged from the bar after the officer had continued down the alley. At the trial, however, defendant claimed that he had entered the bar at that early hour, thinking the bar was open, for the purpose of getting a drink. This version was advanced after a barmaid had testified she saw him outside after she had locked the bar for the night, and furthermore, that it would have been impossible for the defendant to have hidden where he claimed.

On appeal, defendant contends that it was error to allow an amendment to the information after the parties had rested, to include "or remained in" the bar. This contention is without merit since the amendment did not change the basic charge from the burglary alleged to some other charge. The information charged defendant by Title and Section, which apprised him of the statutory offense and which included the very phrase about which defendant now takes issue. The defendant's own contention that he remained in the building was sufficient justification for the prosecution to request the amendment.

Likewise, defendant's contention that the instruction which included the phrase "or remaining in" was in error because such language was not in the information, is without substance. The instruction was simply a recitation of the elements of the statute that the information referred to in charging the defendant with the offense. We have previously held that it is not error to instruct according to statutory

---

1. "A person is guilty of burglary if he enters or remains unlawfully in a building ... with in- tent to commit a felony or theft ...."

terms when the evidence justifies the instruction.[2]

■ Defendant requested an instruction to the effect that if one enters a building reasonably believing that a business therein is "open to the public," he cannot be found guilty of burglary under the statute. We have oftimes held that a defendant is entitled to a jury instruction on his theory of the case only where it is supported by substantial evidence.[3] In the instant case, defendant was apprehended at 4:00 a.m. The business lights were off, and there were no employees present or other activity in the area. The door through which entry was gained was from the alley and it could be only partially opened. In view of such evidence, we do not believe defendant was entitled to an instruction as to his belief that the business was open.

■ Defendant contends that the contents of the trash can were improperly admitted into evidence. In support of this contention, he first claims that the officer did not testify that the items were in the same condition as at the time the offense occurred. To be admissible in evidence, an object must be shown to be "in substantially the same condition as at the time of [the] crime." *State v. Madsen,* 28 Utah 2d 108, 498 P.2d 670 (1972). In view of the officer's testimony regarding the contents of the can at the time of the offense, the inventory he prepared, and the chain of custody of the evidence, the likelihood that the evidence was tampered with is remote. In such a case, the evidence is generally admissible. See *State v. Eagle Book, Inc.,* Utah, 583 P.2d 73 (1978). Furthermore, the value of the contents of the can was not crucial to prove the offense charged (burglary) inasmuch as the offense and sentence remain the same regardless of how much is taken. Also in support of his contention that the contents of the trash can were improperly admitted, defendant claims that each item

in the can should have been individually identified. On the facts presented, it was not necessary to follow the procedure of marking each item separately. See *State v. Whittenback,* Utah, 621 P.2d 103 (1980).

■ Finally, defendant contends that it was error to allow an officer to testify as to a statement made to him by the defendant after having been given the *Miranda* warning but before he had actually waived any rights. We are of the opinion that admitting what defendant said after having been given the *Miranda* warning (and after he had stated that he understood his rights explained to him, which expressly included the right to remain silent), did not constitute reversible error in light of the overwhelming evidence that independently and fully supported what he had said. After the *Miranda* warning was given, defendant told the officer, among other things, "I got caught." The *Miranda* rule was not designed to prevent an accused from talking to anyone, unless it was the subject of coercion or circumstances showing that he was thwarted by someone or something from carrying out a wish to remain silent. The officer in this case merely asked defendant what happened. There was no evidence that he was of an unfriendly or threatening nature, or that he otherwise took advantage of defendant. The defendant indicated his disinclination to assert his known right to remain silent[4] by freely and willingly answering the officer's question. The trial judge admitted defendant's confession, which determination was the prerogative of the trial judge as reflected in *State v. Winkle*[5] as follows:

> The question thus posed is whether the defendant, in awareness of his rights, and in circumstances where he was free to choose, knowingly and voluntarily waived his right to remain silent and to have counsel. *It is both the prerogative and*

---

2. *State v. Minnish,* Utah, 560 P.2d 340 (1977).

3. *State v. Asay,* Utah, 631 P.2d 861 (1981); *State v. Brown,* Utah, 607 P.2d 261 (1980); *State v. Dock,* Utah, 585 P.2d 56 (1978).

4. *State v. Ashdown,* 5 Utah 2d 59, 296 P.2d 726 (1956); *State v. Meinhart,* Utah, 617 P.2d 355 (1980).

5. Utah, 535 P.2d 82 (1975).

*the duty of the trial court to make that determination.* [Emphasis added.]

There appears here to have been full knowledge and understanding of rights, and a voluntary and knowledgeable nonassertion of a claim to remain silent, coupled with a waiver of such right.

The verdict and judgment are affirmed.